George Andrews, J.,
delivered the opinion of the Court.
*286 ■ James Cowan died in tbe year 1838, seized and possessed of certain land in Wilson County, wbicb, by his will, he devised to his widow for her life, and at her decease, to be equally divided among his five children, George W., Matthew W., Martha J., Docia A. and Sarah. The widow died in 1848.
At the May Term, 1850, of the Circuit Court for Wilson County, a petition was filed in the names of the five children of James Cowan, above named — the three last named being stated to be minors, and joining in the petition by their guardian, Benjamin Woods. The petition stated the above facts in regard to the land, and prayed for a partition thereof; and at the same term of the Circuit Court an order was made appointing three commissioners to make the partition.
The three commissioners made their report to the same term, in which they state that, having examined the tract of land, they think unadvisabie to divide it, and that it would be to the interest of the heirs to have the land sold all-in one tract.
This petition was dismissed by the Circuit Court.
At the September Term, 1850, of said Circuit Court, a second petition was filed by George W. and Martha W. Cowan against Martha J., Docia A., and Sarah Cowan. This petition states the title of petitioners and defendants to the land; that they had, theretofore, petitioned for a division of the land, which petition had been refused for the reason that the land was not susceptible of division, and that the- land ought to be sold. It' alleges that the defendants are minors, and prays for a sale of the land. The petition is signed by solicitor, *287 and is not sworn to, and it does not appear upon what day it was filed.
The answer of Sally Cowan, Martha J. Cowan, and Docia A. Cowan, by their guardian, Benjamin Woods, to this petition, was filed, admitting the title as charged in the petition, and submitting their rights to the protection of the Court. The answer was sworn to by B. F. Woods.
At the September Term, 1850, a decree was entered reciting that the cause came on to be heard upon the petition, answer, and proof in the cause. The decree recites the title of the parties to the land, and a description of the premises; and further recites that it appears that the land can not be well divided, and ought to be sold, and directs that the clerk sell the land on a credit of one and two years, saving a payment of fifty dollars to be made in cash. This decree also appoints Commissioners to make division among the heirs, of the negroes belonging to the estate of James Cowan.
The clerk made his report to the January Term, 1851, showing that he sold the land on the 7th of November, 1850, in pursuance of the former decree, to Paulding Anderson, at the price of $11.11 per acre, and that the purchaser paid seve/ity-five dollars in cash, and gave two notes with good security for the balance of the purchase money; and the report was thereupon confirmed.
At the January Term, 1852, a decree was made, reciting that P. Anderson, the purchaser of the land, had paid the first installment of purchase money, and directing the clerk to pay to Benjamin Woods, as guardian *288 of Docia A. and Martha Cowan, their shares; and that Elizabeth Cowan, having married Oldham, she shall be privately examined before her husband shall be allowed to recept for her share.
At the September Term, 1853, a decree was made, reciting that the purchase money of the land had been fully paid, and divesting title out of the “heirs of James Cowan, (the whole of them being parties to this proceeding,”) and vesting it in Paulding Anderson.
The bill in this cause, was filed on the 17th September, 1860, by Martha J. Cowan and her two sisters, Sarah J. and Docia A., with the husbands of the two latter, against Paulding Anderson and other parties who had purchased portions of the premises from him.
The bill alleged that the three female complainants were entitled to three-fifths of the above-mentioned premises, and had commenced an action of ejectment for the recovery thereof; that the defendants claim title under the decrees of the Circuit Court above-mentioned, and the sale made to Anderson; and that the said decrees and sale were null and void for various reasons stated, and constitute a cloud on the title of complainants.
The bill prays that the defendants be enjoined from relying upon and setting up the decrees and sale aforesaid, in defense to the action of ejectment, and that said decrees and sale be declared void and be set aside and annulled for an account of rents and profits, and for general relief.
The defendants answered the bill, setting forth and relying upon their title under the sale to Anderson and the decree of the Circuit Court.
*289 The Chancellor dismissed the bill upon final hearing, and the complainants have appealed to this Court.
The present bill is not a bill of review, or in the nature of a bill of review, but is purely a collateral proceeding directly attacking the decrees of the Circuit Court and the sale made thereunder, upon the alleged ground that the decrees are void for want of jurisdiction in the Court rendering them.
If the Circuit Court, in rendering the decrees in question, had jurisdiction of the subject-matter and of the persons of the complainants, the proceedings, however erroneous, will not, in this collateral suit, be held to be void. It is not alleged or proved that any fraud in fact existed in the proceedings, that the lands did not bring their full value, or that the complainants did not receive the full benefit of the proceeds of the sale.
The material inquiry in the present case is, whether the Circuit Court had jurisdiction of the subject-matter and of the parties to the petition for sale of land upon which it assumed to act.
The petition upon which the decree of sale was made stated the title of the petitioners and defendants to the land, and alleged further, as follows: “Your petitioners would further state that they petitioned for a division of the said land, which was refused for the reason the said land was .not susceptible of division, and that the said land ought to be sold.”
The decree for sale recites that the cause came on to be heard upon the petition, answer and proof in the cause; and “it further appearing that the land can not *290 be well divided and ought to be sold,” Vthe clerk is directed to make the sale.
We have given a very careful consideration to this cause, and without entering here upon a discussion of the multitude of cases in our own courts and elsewhere upon this subject, we are of the opinion that the allegations and recitals in the petition and in the decree, are sufficient to show that the Circuit Court had jurisdiction of the subject-matter of the petition.
We are not disposed to hold courts and parties to an extraordinary degree of strictness in cases of this kind where the proceedings are attacked in a collateral suit; and if the record, by reasonable intendment, show a substantial compliance with the requirements of the statute in matters going to the jurisdiction, it is sufficient, when the question is made in an action of this kind. The question is not now whether the proceedings are erroneous, but whether they are absolutely void for want of jurisdiction.
But it is claimed that no process was served upon the present complainants, who, being minors, were made defendants to the petition for sale, and that the answer filed in their name by their general guardian, did not have the' effect to bring them before the Court, and to give jurisdiction of their persons.
Under the practice of the Courts of Chancery in England, and in many of the States of the Union, a regular guardian can not, in that capacity, appear and make defense in court for his ward; but a guardian ad litem must be appointed for that purpose, the authority of *291 the regular guardian not enabling him to represent the infant in Court.
Of course the appointment of a guardian ad litem can not be made until the Court has, by service of process, acquired jurisdiction of the person of the infant; and if the guardian ad litem is appointed before such jurisdiction has been acquired, the appointment is a nullity, and no act.of the guardian thus appointed can bring the infant before the Court.
But under the practice in this State, when an infant defendant has been properly brought before the Court, the regular guardian may appear and make defense for him, and the appointment of a guardian ad litem is unnecessary.
It was settled long ago, in the case of Brittain vs. Cowen, 5 Hum., 315, that, except where the statute required service of process to be made upon the infant personally, it is sufficient to serve it upon his regular guardian. That decision has been too long acquiesced in to be now safely questioned, and undoubtedly if the regular guardian of the present complainants had been in that capacity served with process in the partition suit, the Court would, by such service and the appearance and answer of the guardian, have obtained jurisdiction of the persons of the wards.
The guardian, however, appeared in the cause and filed an answer on behalf <-f the infants without service of process upon him or hh wards; and it .is claimed that this action mi hv part was beyond his authority and void, and the subsequent action of the Court without jurisdiction. We do not so consider it.
*292 The law of this State permits this process to be served upon the guardian instead of the ward, and authorizes the guardian, upon being thus served with notice, to appear in behalf of his ward and defend the suit for him. The notice may never, in fact, reach the ward, and it is not essential that it should do so. But, if the suit is actually defended on behalf of the infant by a person authorized by law to represent him in the suit, the whole purpose of the law has been accomplished.
So long as we recognize the right of the regular guardian to represent his ward and make defense for him without any express authority from the Court in the particular suit, and the doctrine in Britain vs. Cowen, that service of process upon the guardian alone is sufficient service upon the ward, it is not easy to avoid the conclusion that the guardian may waive the service upon him and enter his ward’s appearance in the suit without process.
If personal service upon the ward were essential to jurisdiction, the guardian could not waive it for him. But where notice to the guardian only is sufficient, and the guardian, by appearing in the suit and making defense, does the very thing which the service of process was intended to enable him to do, it would be merely sticking in the bark to say that the parties must at all events, incur the useless expense and trouble of serving formal notice of a fact which the guardian already knows; a notice which he does not need, and which he offers formally to waive.
We conclude that the appearance of the regular guardian, on behalf of his wards, and making defense *293 for them in the suit for partition, gave the Court jurisdiction of their persons; and the decrees in that suit are not void because the original process in that case was not executed upon the infants in person.
Britain vs. Cowen, probably goes to the verge of the law, but we do not feel at liberty to disturb it now; and recognizing that case as authority, our present decision necessarily follows. But the practice of serving process upon the guardian only, is one not to be encouraged; and in cases where fraud is charged, or suspected, in the proceedings against the infant, the fact that the infant was not personally served with process, might be, under some circumstances, an important consideration.
An objection to the validity of the sale is now made, based upon the reports of the Clerk of the Circuit Court, showing the price per acre, and the amount of purchase-money received by him, from which it would appear that the purchaser could have paid for only about 287 acres of land, while the amount mentioned in the decree confirming the sale is 323 acres and 86 poles.
No such objection to the proceedings is taken in the complainant’s bill, and no mention is made in the bill of this discrepancy. If any mistake or error, was made in computing the amount of purchase-money, the error should have been corrected; but it is not a ground for now declaring the sale a nullity, in the absence of fraud, which is not alleged. The bill is not filed to correct any mistake in the description of the premises, *294 or in the proceedings upon the sale, but to set the sale aside altogether, as a nullity.
The answer of the guardian in this case, was sworn to by him; and the fact that it was drawn, or written for him by the solicitor for the petitioners, though it might, under some circumstances, be taken into consideration as one item of evidence, having some weight upon a question of fraud, does not alone render it void.
We cannot, in this suit, decree the sale to the defendant, Anderson, void; and the decree of the Chancellor, dismissing the complainant’s bill, will be affirmed.